**STATE OF WEST VIRGINIA**

*In re* **A.M.**

**No. 20-0566** (Marion County 18-JA-116)

**FILED**

**December 10, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**MEMORANDUM DECISION**

Petitioner Mother T.M., by counsel Holly Turkett, appeals the Circuit Court of Marion County's June 22, 2020, order terminating her parental rights to A.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee A. Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Frances C. Whiteman, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her a post-dispositional improvement period and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The DHHR filed a child abuse and neglect petition against petitioner based upon allegations of drug abuse. Specifically, petitioner abused an unknown controlled substance and was rendered unconscious while A.M. was in her care. A.M., then nine years old, discovered petitioner, ran to a neighbor's home requesting help, and then returned to perform CPR on petitioner until her father arrived. Once paramedics arrived, they administered CPR and Narcan, resulting in petitioner regaining a pulse. Petitioner later informed a Child Protective Services ("CPS") worker that she found and ingested an unknown substance. A basic toxicology report indicated that petitioner tested positive for buprenorphine, for which she did not have a current prescription. Petitioner waived her preliminary hearing.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

The circuit court held an adjudicatory hearing wherein petitioner stipulated to the allegations contained in the petition. Petitioner specifically stipulated that she ingested an unknown substance while the child was in her care which rendered her unconscious and, therefore, unable to care for the child. The circuit court accepted petitioner's stipulation, adjudicated her as an abusing parent, and granted her a post-adjudicatory improvement period.

In the nearly two years that followed, petitioner's participation in services was minimal. Petitioner missed numerous supervised visits with the child and only sporadically complied with parenting and adult life skills classes. From October of 2018 through February of 2019, petitioner submitted to only five drug screens, all of which were positive for buprenorphine. Petitioner failed to provide a prescription for the medication at those screens. Notwithstanding petitioner's minimal participation in services, her lack of compliance with her parenting and adult life skills classes, and her positive drug screens, the circuit court repeatedly ordered continuances in the case.

At a review hearing held in March of 2019, the circuit court found that petitioner failed to successfully complete her improvement period. Petitioner failed to confirm supervised visits with the provider, resulting in the cancellation of those visits, and failed to appear at others she had confirmed. At that point in the proceedings, petitioner had completed more parenting and adult life skills classes than actual visits with the child. From December of 2018 though the date of the review hearing in March of 2019, petitioner should have submitted to twenty-eight drug screens but had submitted to only one. As such, the circuit court set the dispositional hearing.

In April of 2019, the circuit court held a dispositional hearing. Petitioner requested a post-dispositional improvement period, which was either denied or held in abeyance.[2] Despite the fact that petitioner had reached the conclusion of her improvement period and the father was only beginning his proceedings and had not yet been adjudicated, the circuit court continued petitioner's dispositional hearing to "align" with the father's adjudicatory hearing. Later that month, petitioner's visits and phone calls with the child were suspended due to her lack of compliance.

The father was adjudicated as an abusing parent in May of 2019 and, once again, petitioner's dispositional hearing was continued to align with the father's dispositional hearing. At a multidisciplinary team ("MDT") meeting held later that month, the MDT noted that petitioner had been more consistent in maintaining contact with the DHHR and so phone calls with the child were reinstated. However, petitioner submitted to only three drug screens in the month of May, all of which were positive for nonprescribed buprenorphine.

Petitioner's dispositional hearing was continued again in June of 2019 and August of 2019. During that time, petitioner submitted to only five drug screens, four of which were positive for nonprescribed buprenorphine. Petitioner was discharged from her parenting and adult life skills classes for noncompliance, yet, only weeks later, the DHHR created new referrals for those services. In September, petitioner provided a CPS worker a picture of her alleged prescription for buprenorphine, but neither the name of the prescription nor the name of the patient could be seen in the picture.

In October of 2019, the dispositional hearing was continued due to the DHHR's witness's failure to appear and to allow petitioner time to "come into compliance" with services. As of

---

[2]The circuit court's ruling on petitioner's motion at this hearing is not readily apparent from the record.

November 1, 2019, petitioner should have submitted to 109 drug screens but had submitted to only 22. That same month, petitioner's service providers indicated that she had exhausted her parenting and adult life skills classes. In December of 2019, the MDT informed petitioner that another referral for services would not be provided until she began consistently submitting to drug screens, despite the fact that petitioner seemingly had already exhausted her services.

At an MDT meeting held in January of 2020, the members indicated that petitioner had not submitted to a drug screen since November of 2019. Petitioner cited transportation issues as her reason for not participating in drug screens, and the DHHR informed petitioner, who did not have a stable living situation at that time, that there was room available at a local mission which would provide her with housing and closer proximity to her drug screening location. Petitioner did not take advantage of the opportunity.

Despite petitioner's submission to only two drug screens since the prior MDT meeting, parenting and adult life skills classes were reauthorized for her in February of 2020. At a dispositional hearing held that month, petitioner requested a post-dispositional improvement period, which was denied. Although petitioner's usual drug testing location was closed thereafter due to the COVID-19 pandemic, petitioner was instructed to submit to screens at another location but failed to do so.

The circuit court held a final dispositional hearing in May of 2019. The circuit court noted that petitioner finally completed parenting and adult life skills classes but found that she failed to remedy the conditions that led to the petition's filing—her drug abuse. Petitioner failed to consistently participate in drug screens and had no meaningful drug treatment. Despite testing positive for buprenorphine throughout the proceedings, petitioner provided a valid prescription for the substance covering only five months. Further, petitioner maintained her relationship with the father and was living with him at the time of the dispositional hearing despite his complete lack of participation in the proceedings. At that time, the child had been in the DHHR's custody for twenty-one months and desired to be adopted by her aunt and uncle. Given petitioner's lackluster participation in services and her failure to address her drug abuse, the circuit court terminated petitioner's parental rights upon finding that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and that termination was necessary for the child's welfare. Petitioner appeals the June 22, 2020 dispositional order.[3]

The Court has previously established the following standard of review in cases such as this:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However,

---

[3]The father's parental rights were terminated below. The permanency plan for the child is adoption by an aunt and uncle.

a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred in denying her a post-dispositional improvement period. Petitioner acknowledges that she "had difficulty" submitting to drug screens but claims that she tested positive only for buprenorphine and norbuprenorphine, substances for which she had a valid prescription prior to the proceedings. Petitioner also notes that she provided a prescription during the proceedings. Petitioner argues that the petition was filed based upon allegations regarding a "single occurrence" of drug use and that there was never any evidence submitted that she had an ongoing drug problem that would prevent her from safely parenting the child. Petitioner states that she experienced transportation issues that prevented her from consistently participating in services but notes that she completed her parenting and adult life skills classes despite the DHHR's failure to assist her with transportation. Petitioner argues that she demonstrated a substantial change of circumstances since the granting of her post-adjudicatory improvement period and, thus, was entitled to a post-dispositional improvement period.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements[.]"). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence that the respondent is likely to fully participate in the improvement period.'" *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004) (quoting W. Va. Code § 49-6-12(b)(2) (1996)). Pursuant to West Virginia Code § 49-4-610(3)(D), if a parent has previously been granted an improvement period, she must "demonstrate[ ] that since the initial improvement period, the [parent] has experienced a substantial change in circumstances" and "demonstrate that due to that change in circumstances, the [parent] is likely to fully participate in the improvement period."

Here, petitioner failed to demonstrate that she was likely to fully participate in a post-dispositional improvement period or that she had experienced a substantial change in circumstances. While petitioner provided a valid prescription for buprenorphine towards the end of her proceedings, she failed to provide a prescription for the large majority of the proceedings. More importantly, however, petitioner failed to consistently submit to drug screens. Of the 180 scheduled drug screens, petitioner submitted to 28. Although petitioner states that transportation problems were the reason that she did not consistently submit to drug screens, she cites to only two instances in the record demonstrating that she blamed transportation issues. On the first instance, petitioner requested a ride to the testing center the day of a drug screen and failed to report an ongoing problem with a lack of transportation. On the second instance, petitioner informed the DHHR of a lack of transportation from the residence at which she was staying, and the DHHR provided her with an alternative opportunity to obtain housing closer to the testing

center. At no point does petitioner cite to a portion of the record demonstrating that she requested ongoing transportation assistance throughout the proceedings. Moreover, a service provider questioned petitioner when she cited transportation issues, asking petitioner how she was able to travel to her job but not a drug testing center, and petitioner failed to respond. Petitioner was discharged from services on multiple occasions due to her noncompliance, failed to consistently visit with the child, and maintained her relationship with the father despite his complete lack of participation in the proceedings.

We further note that a parent's rights are "necessarily limited" as to improvement periods "because the pre-eminent concern in abuse and neglect proceedings is the best interest of the child subject thereto." *In re J. G.*, 240 W. Va. 194, 204, 809 S.E.2d 453, 463 (2018) (quoting *In re Emily*, 208 W. Va. 325, 336, 540 S.E.2d 542, 553 (2000)). We have recognized that

> the statutory limits on improvement periods (as well as our case law limiting the right to improvement periods) dictate that there comes a time for decision, because a child deserves resolution and permanency in his or her life, and because part of that permanency must include at minimum a right to rely on his or her caretakers to be there to provide the basic nurturance of life.

*State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 260, 470 S.E.2d 205, 214 (1996). Petitioner's case, and her opportunity to participate in services, covered the course of twenty-one months, and she cites to no evidence demonstrating that continuing an improvement period beyond the statutory guidelines set forth in West Virginia Code § 49-4-610 would be in the child's best interests. Given the foregoing, we find no error in the circuit court's denial of petitioner's motion for a post-dispositional improvement period.

Petitioner next argues that the circuit court erred in terminating her parental rights when there were less-restrictive dispositional alternatives available. Petitioner claims that she corrected the conditions leading to the petition's filing and only failed to attend drug screens. She states that she "did not attend all drug screens requested by [the DHHR], however aside from her not complying with all their requirements, there was no evidence presented that justified finding a termination of her rights was the only solution."

West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(d) provides that a situation in which there is "[n]o reasonable likelihood that [the] conditions of neglect or abuse can be substantially corrected" includes when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."

The evidence as set forth above supports the termination of petitioner's parental rights. Although petitioner claims that she tested positive for only buprenorphine during the proceedings and had no other issues with drug abuse, her argument is disingenuous in light of her extensive failure to drug screen on many occasions. Indeed, petitioner failed to attend 152 drug screens. Moreover, petitioner provided a valid prescription for only a fraction of the proceedings. Petitioner

missed visits with the child, was discharged from services on multiple occasions, and continued residing with the father despite his failure to address the conditions of abuse and neglect. To the extent petitioner claims that she should have been granted a less-restrictive alternative to the termination of her parental rights, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Despite the provision of services over the course of nearly twenty-one months, petitioner was unable to demonstrate that she addressed the conditions of abuse and neglect. Therefore, we find no error in the circuit court's termination of her parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 22, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: December 10, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison